JUNJI SUZUKI (SBN 184738)
junji@marshallsuzuki.com
MARSHALL SUZUKI LAW GROUP, LLP
230 California Street, Suite 415
San Francisco, CA 94111
Telephone: (415) 618-0090
Facsimile: (415) 618-0190
Attorney for Applicant,
Keiji Yoshida

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re Ex Parte Application of<br><br>KEIJI YOSHIDA,<br><br>            Applicant. | Case No:<br><br>**DECLARATION OF KEIJI YOSHIDA IN SUPPORT OF EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FOR USE IN FOREIGN PROCEEDING** |

I, Keiji Yoshida, declare as follows:

1. I am a software engineer and was an employee by Databricks Inc. ("Databricks") located in Japan. On January 21, 2021, an unknown individual ("Account Holder") under an account whose email address is "hiroki.nakayama1980@gmail.com" and display name is "中山博貴" (the "Subject Google Account") sent a libelous statement to an employee of Databricks regarding me (the "Email"), which is described in Exhibit A attached hereto (the "Email"). Exhibit A is a true and correct photo copy of the Email as of June 25, 2021. The Email provides that I kissed the woman who was his colleague, made physical contacts and other obscene conducts against her by lying I was single despite I was married, and committed adultery and repetitive stalking against other women. Account Holder asked Databricks in the Email whether Databricks considered

-Page 1 of 2-

**In re Ex Parte Application of Keiji Yoshida**
Declaration of Keiji Yoshida in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

it was appropriate to employ me. In addition, Account Holder indicated in the Email that it ruined the reputation of Databricks to continue employment with me. Though this statement was completely baseless, Databricks recommended me to resign the company, and I had no choice but to resign Databricks.

2. The factual statement that I performed obscene conduct against a woman and attempted to have sexual relationship with other women are false. I was associated with a woman, whose name is Chie Hayashida ("Hayashida") from February 2020 to July 2020. Although I was married to another woman at that time, based on the SNS massages between her and me via LinkedIn, she obviously hoped to have such relationship with me. After the relationship was broken up, from November 2020 to February 2021, a Twitter account[1], whose account name is "@chie8842" (the "Twitter Account"), posted that I sexually harassed Hayashida, attempted to have sexual relationship by lying I was single despite I was married, and commited adultery and repetitive stalking against other women[2,3,4,5,6] (the "Twitter Posts"). However, I have never performed obscene conduct against any woman nor attempted to have sexual relationship with other women while I was married.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: September 11th, 2021    By: _Keiji Yoshida_
                                    Keiji Yoshida

---

[1] https://twitter.com/chie8842
[2] https://twitter.com/chie8842/status/1329329461049712643
[3] https://twitter.com/chie8842/status/1329380917735899137
[4] https://twitter.com/gihyo_hansoku/status/1349981151163629568 (Retweet)
[5] https://twitter.com/chie8842/status/1349994413691322372
[6] https://twitter.com/chie8842/status/1358248779514712064

**In re Ex Parte Application of Keiji Yoshida**
Declaration of Keiji Yoshida in Support of Ex Parte Application for Order pursuant to 28 U.S.C. § 1782 Permitting Discovery for Use in Foreign Proceeding

# Exhibit A

---------- Forwarded message----------
From Hiroki Nakayama <hiroki.nakayama1980@gmail.com>
Date: 1/21/2021 (Thu) 22:15
Subject:
To: <satoshi.okamoto@databricks.com>

Dear Databricks Japan company, Mr. Okamoto

Please forgive me for this anonymous contact.
I am a person working in a company that has a business relationship with your company.
I am contacting you about Mr. Keiji Yoshida, who joined your company last November.

When Mr. Yoshida was at Google, he acted obscenely against a female engineer whom I know (I will refer to her as Ms. A for the purpose of this contact). She is a contributor to (a developer of) Apache Spark, and has experience speaking about Apache Spark both in Japan and overseas. Immediately after she joined Google, he tricked her into meeting him using the excuse that he needed to talk to her about Spark as a cover, and despite being married he lied to her that he was single and committed obscene acts such as kissing her and touching her body, and so on.

After that, further, and in spite of the current coronavirus pandemic situation, he repeatedly stalked Ms. A, visiting her house many times, and harassed her with messages such as "I cannot give up on you" and "I love you".

Also, I heard from another source that Mr. Yoshida had repeated affairs with women and stalked and harassed several women even when he worked at LINE, and that he also approached and propositioned another woman (or women) at Google as well.

Ms. A filed a complaint to Google about such acts, but Mr. Yoshida resigned.
Before Mr. Yoshida resigned, there was a signature-collecting campaign including people working in both APAC and the U.S. to request an investigation into his behavior at Google.

Mr. Yoshida's sexual misconduct at LINE and Google is a well-known story among Spark engineers, and many people who work for companies such as Google, Microsoft, AWS, NTT DATA, NTT R&D, DMM, etc. that support Spark in Japan know about this.

Since Ms. A is a Spark engineer, the fact that Mr. Yoshida is in Databricks creates a tremendous mental burden for Ms. A.

Also, in this way, within the Spark community, which is a product of Databricks, does it not damage your image that a person who takes advantage of Spark to engage in such sexual misconduct also works as a Solutions Architect for Databricks?
Will you let a person who has used your product for sexual harassment sell your product?

2

In addition to that, I'm afraid it will inhibit diversification of the Spark community in Japan.
I myself am working in the data related industry and have participated in Spark technical events sponsored by your company, and I feel uncomfortable about this matter at the very least.
In addition, it may affect the future hiring of engineers, especially women.

I wonder if this behavior is acceptable for your company in terms of allowing such harassment while promoting diversity?
I personally have high expectations in terms of Databricks as a company in the future, but when I think of it as a company that can allow such person to continue to be employed, I don't feel like using your products.

From the standpoint of the company I'm working for, I am not able to present my name, however, I can't ignore this matter and remain silent on it. Thus, I have made the decision to contact you via this method.

Thank you very much for your patience and I sincerely hope you will consider this matter.